# Houseman *versus* Girard Mutual Building and Loan Association.

1. The recorder of deeds is liable in damages for a false certificate of searches.

2. The liability of the recorder is to the party who asks and pays for the certificate, not to his assigns or alienee.

3. Leslie, desiring a loan from plaintiffs, to be secured by mortgage on his property, plaintiffs' conveyancer ordered searches for liens ; through Leslie he procured a certificate from the recorder that there were no mortgages on the property, on this the loan was made. There being prior mortgages given by Leslie not certified, on the sale of Leslie's property by the sheriff the proceeds did not reach to pay the loan: *Held,* that the recorder was liable to plaintiffs for the loss.

4. The employing Leslie to procure the certificate did not affect the plaintiffs with his knowledge.

5. A principal is affected only by such knowledge of his agent as the agent acquired in the business in which he is employed.

6. It is only during the agency that the agent represents and stands in the shoes of the principal ; notice to him then is notice to the principal.

7. The employment of Leslie to procure the certificate, was not negligence on the part of the conveyancer imputable to the plaintiffs.

8. Bracken *v.* Miller, 4 W. & S. 110 ; Commonwealth *v.* Kellogg, 6 Phila. R. 90 ; Martin *v.* Jackson, 3 Casey 508 ; McCaraher *v.* Commonwealth, 5 W. & S. 21 ; Wood *v.* Fahnestock, 8 Watts 489.

February 29th 1876. Before SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia:* Of January Term 1875, No. 109.

[Houseman *v.* Girard Mutual B. & L. Association.]

This was an action on the case, brought September 29th 1873, by the Girard Mutual Building and Loan Association against John A. Houseman.

The declaration set out, in one count, that the plaintiffs, being about to lend to one Charles M. S. Leslie the sum of $2000, on a first mortgage, requested the defendant, then being recorder of deeds of Philadelphia, "to certify every unsatisfied mortgage of a messuage and lot, or piece of ground situate on the north side of St. Albans Place, 207 feet 6 inches west of Twenty-third street, in the Twenty-sixth Ward of the said city of Philadelphia, containing in front on the said St. Albans Place 16 feet, and extending in depth northward 62 feet to a twelve-feet-wide alley; given by the said Charles M. S. Leslie since October 1st 1868; that the defendant, on the 21st of August 1871, negligently and falsely certified that there was no prior unsatisfied mortgage of the premises given by Leslie since the time mentioned, except one to Elizabeth C. Erwin, from the lien of which the premises mentioned had been released; that, relying on the truth of said certificate, the plaintiffs lent to Leslie the sum of $2000 on the security of his mortgage of the premises to the plaintiffs. The declaration averred that there was, at the time of giving the certificate, remaining of record in the recorder's office, a mortgage of the premises from Leslie to Alexander Smith, dated August 11th 1870, for $3000, and thereby the mortgage from Leslie to plaintiffs was worthless, and the $2000 lent to Leslie was lost.

Another count was that, on the 20th of December 1871, the plaintiffs, being about to lend to Leslie a further sum of $1600 on a mortgage to be given by him on a messuage and lot or piece of ground situate on the south side of St. Albans Place, 335 feet 6 inches west of Twenty-third street, in the Twenty-sixth Ward of the said city of Philadelphia, containing in front on the said St. Albans Place 16 feet, and extending in depth southward 62 feet to a twelve-feet-wide alley, and requested the defendant as recorder to certify every unsatisfied mortgage on said premises given by Leslie since October 1st 1868; that the defendant certified that there was no unsatisfied mortgage but that before mentioned to Elizabeth C. Erwin; that the plaintiffs, relying on the certificate, lent to Leslie the $1600, and took a mortgage from him dated December 19th 1871, on the last-mentioned premises. The declaration averred that there was at the time remaining on record in the recorder's office an unsatisfied mortgage on these premises from Leslie to Smith, dated October 27th 1870, for $2500; that thereby the plaintiffs' mortgage was worthless, and the $1600 were wholly lost.

The case was tried October 28th 1874, before Lynd, J.

The plaintiffs gave in evidence the following papers:—

31 P. F. Smith—17

[Houseman *v.* Girard Mutual B. & L. Association.]

No. 1.

" No. 2327 St. Albans Place.

" Please certify every unsatisfied mortgage of messuage and lot
or piece of ground situate on the north side of St. Albans Place,
207 feet 6 inches west of Twenty-third street, in the Twenty-sixth
Ward of the city of Philadelphia, containing in front, on the said
St. Albans Place, 16 feet, and extending in depth northward 62
feet, to a twelve-feet-wide alley, given by Charles M. S. Leslie
since October 1st 1868.

" To John A. Houseman, Esq., Recorder of Deeds."

" On searching the index of mortgages for the city and county
of Philadelphia, I do not find any unsatisfied mortgage of the
premises, or any part thereof, by Charles M. S. Leslie since Octo-
ber 1st 1868, except one to Elizabeth C. Erwin *et al.*, dated Octo-
ber 13th 1868, for one hundred and sixty thousand dollars, and
another to The Girard Mutual B. & L. Asso., dated August 18th
1871, for two thousand dollars.

Witness my hand and seal of office this twenty-first day of Au-
gust, A. D. 1871.

[SEAL.]                    M. W. Myers, pro Recorder."

" Note.—The premises above described released from the lien
of the $160,000 mortgage. * * * November 1st 1869. * * *

Endorsed on above search.

" On searching the index of mortgages for the city and county
of Philadelphia, I find no unsatisfied mortgages of the above de-
scribed premises, or any part thereof, given by Charles M. S.
Leslie, from October 1st 1868 to August 21st 1871, except two,
one of them to Alexander Smith, dated August 11th 1870, for
three thousand dollars, and the other one of them to the Girard
Mutual Building and Loan Association, dated August 18th 1871,
for two thousand dollars.

Witness my hand and seal of office this seventh day of August,
A. D. 1873.

[SEAL.]                    Jas. W. Allen, pro Recorder."

" Received August 18th 1871, to the Girard Mutual B. & L.
Asso., dated August 18th 1871, for $2000."

No. 2.

" Please certify every unsatisfied mortgage of messuage and lot
or piece of ground situate on the south side of St. Albans Place,
335 feet 6 inches west of Twenty-third street, in the Twenty-sixth
Ward of the city of Philadelphia, containing in front on the said
St. Albans Place 16 feet, and extending in depth southward 62
feet to a twelve-feet-wide alley, given by Charles M. S. Leslie,
since October 1st 1868.

                                        " Leslie.

" To John A. Houseman, Esq., Recorder of Deeds."

[Houseman *v.* Girard Mutual B. & L. Association.]

" On searching the index of mortgages for the city and county of Philadelphia, I do not find any unsatisfied mortgage of the premises, by Charles M. S. Leslie, since October 1st 1868, except one to Elizabeth C. Erwin *et al.*, for one hundred and sixty thousand dollars, dated October 13th 1868, and one other to The Girard Mutual Building & Loan Association, for one thousand six hundred dollars, dated December 19th 1871.

" Witness my hand and seal of office this 20th day of December, A. D. 1871.

[SEAL.]                     M. W. MYERS, pro Recorder."

" Note.—The premises in question released from the lien of the $160,000 mortgage. * * * November 1st 1869. * * *"

" On searching the index of mortgages for the city and county of Philadelphia, I find no unsatisfied mortgages of the above described premises, or any part thereof, given by Charles M. S. Leslie, from October 1st 1868, to December 20th 1871, except two, one of them to Alexander Smith, dated October 27th 1870, for two thousand five hundred dollars, and the other one of them to the Girard Mutual Building & Loan Association, dated December 19th 1871, for sixteen hundred dollars.

" Witness my hand and seal of office this seventh day of August, A. D. 1873.

[SEAL.]                     JAS. W. ALLEN, pro Recorder."

The plaintiffs called Albanus Holby, who testified : " I was conveyancer for the building association in 1871 ; I passed the title ; I drew the mortgage and examined the title ; I ordered searches ; this is the mortgage search on which the $2000 were loaned ; the $2000 were paid to C. M. S. Leslie ; this is the mortgage search (December 20th 1871) I ordered ; the $1600 were paid Leslie."

Being cross-examined, witness said : " Leslie applied in writing for the loans ; I searched for the writing ; I know the contents ; it was for a loan of $2000 on the St. Albans Place property ; it said subject to a ground-rent of $2500 only, and no mortgage ; I did not take this search to the office myself ; the order is in Leslie's clerk's handwriting ; I first saw this after it was signed by the recorder with the seal of his office attached ; Leslie was in great haste ; I said I could not get it through in a certain time ; he offered to help ; I told him he might order the search for me ; he did so ; I first saw search No. 2 after the certificate on it ; it is not usual for me to let the borrower get out the search for me ; Leslie could get the search out of the recorder's office more quickly than I ; he had more facilities."

Being re-examined, he said : " Leslie was a conveyancer ; age about 48 years ; was a conveyancer about twenty-five years ; in August 1871 he was considered A No. 1 ; the searches disclose

the building association mortgage; we generally record first, and take out the searches so as to show the mortgage; I examined the searches before the money was paid; Leslie got out all the searches; I ordered them through him; I saw none of the certificates till I got them from him; we foreclosed our mortgage when Leslie was three months in arrear; he paid his dues for a time; I think in the summer of 1873 we became alarmed; Leslie had not left then."

It was admitted that at the date of the certificates the two mortgages of $3000 and $2500 respectively, from Leslie to Smith, were on record in the recorder's office, as set out in the declaration.

The mortgages were afterwards sued out, and the premises which they bound sold by the sheriff. In consequence of the prior mortgages, which were not certified, the plaintiffs realized much less than the amount due them.

The defendant offered no evidence.

They asked the court to charge:—

"1. If the jury believe that the plaintiffs, through their conveyancer, relied upon C. M. S. Leslie to procure the certificates of search, and Leslie, so acting for himself, did procure the certificates, there can be no recovery in this case.

"2. If C. M. S. Leslie was employed by the plaintiffs to procure certificates of search, and did so procure them for the plaintiffs, then the knowledge of Leslie of the existence of the uncertified mortgages was imputed to the plaintiffs and is their knowledge."

Judge Lynd refused both points, and told the jury that the plaintiffs' evidence disclosed negligence in law, and the measure of damages was the amount loaned with interest, less whatever had been paid on account.

He reserved these points, viz. :—

"1. Is there any evidence of negligence?

"2. Leslie having been the agent to procure the searches, does the knowledge by him of the fact of the prior mortgages estop the plaintiffs from alleging that the defendant was negligent, or that he made a false certificate?"

Verdict was for the plaintiffs for $4339.90, subject to the opinion of the court on the reserved points.

The court in banc afterwards entered judgment for the plaintiffs on the verdict on the reserved points.

The defendant took a writ of error, and assigned for error,

1. Withdrawing from the jury all questions of fact, except the amount of damages alleged to have been sustained by the plaintiffs.

2. Ruling that there was nothing in the cause but a question of law, to be determined by the court.

3. Withdrawing from the jury, under the testimony presented, the question of whether Charles M. S. Leslie was the agent of plaintiffs in procuring the certificates of search from the recorder

of deeds, or whether said Leslie was not acting in the matter the himself and in his own behalf.

4. Not instructing the jury that if C. M. S. Leslie was the agent of the plaintiffs in the matter of the searches, said Leslie's knowledge of the existence of the prior uncertified mortgages was the knowledge of the plaintiffs and imputable to them.

5. Instructing the jury that the testimony disclosed such negligence in law as to entitle the plaintiffs to recover.

6, 7. Refusing defendant's points.

8. Entering judgment in favor of the plaintiffs on the points reserved.

*G. W. Biddle* (with whom were *I. N. Brown* and *A. S. Biddle*), for plaintiff in error.—The duty of the recorder is only to the person who employs and compensates him: McCaraher *v.* The Commonwealth, 5 W. & S. 21; Kellogg *v.* Harmer, 6 Phila. R. 90. Even if Leslie were the agent of the plaintiff—if at the time that the searches were ordered Leslie was aware of the prior mortgages, and intentionally omitted to notify the plaintiff thereof, the latter is fixed with his guilty knowledge, and having through Leslie's knowledge constructive notice of the fraud, cannot recover: Toulman *v.* Steere, 3 Merivale 221; Mountford *v.* Scott, 1 Turner & Russel 279; Jackson *v.* Rowe, 2 Sim. & Stu. 472; Kennedy *v.* Green, 3 Myl. & K. 699; Hargraves *v.* Rothwell, 1 Keen 154; Lenehan *v.* McCabe, 2 Ired. Eq. 35; Hovey *v.* Blanchard, 13 N. H. 145; Fuller *v.* Bennett, 2 Hare 394; Worthington *v.* Morgan, 16 Sim. 547; Atterbury *v.* Wallis, 8 DeG., M. & G. 554; Reed's Appeal, 10 Casey 207; Espin *v.* Pemberton, 3 DeG. & Jones 554; Hart *v.* Bank, 33 Verm. 252; Patten *v.* Ins. Co., 40 N. H. 381; Dresser *v.* Norwood, 112 E. C. L. Rep. 466; The Distilled Spirits, 11 Wallace 356.

*D. W. Sellers* (with whom was *H. C. Titus*), for defendants in error, cited Watson *v.* Muirhead, 7 P. F. Smith 167.

Mr. Justice SHARSWOOD delivered the opinion of the court, March 13th 1876.

This was an action instituted in the court below by the defendants in error to recover from the plaintiff in error, who was formerly recorder of deeds for the county of Philadelphia, damages for a false certificate of search issued by him, or by his authority. That such a certificate was issued false in fact; that it was ordered and paid for by the defendants, and that in consequence they suffered damages, were points not in dispute. That the recorder is primâ facie liable to respond in damages for such false search, has been settled in McCaraher *v.* Commonwealth, 5 W. & S. 21, and is no longer an open question.

[Houseman *v.* Girard Mutual B. & L. Association.]

It was decided by the present Chief Justice at Nisi Prius, in Commonwealth *v.* Kellogg, 6 Phila. R. 90, that this liability is to the party who asks and pays for the search, and does not extend to his assigns or alienee.

The contention here all grows out of the fact that the search in this case, by the request of the conveyancer of the defendants, was ordered and paid for by the owner of the premises, in order that he might obtain a loan of money on mortgage from the defendants, and the certificate was so used, and the money so obtained.

It is urged, that by the employment of the owner as the agent for this purpose, the defendants are affected with this knowledge of the existence of the mortgage, which was omitted in the certificate. This is a very familiar principle and well settled. But it is equally well settled that the principal is only to be affected by knowledge acquired in the course of the business in which the agent was employed. This limitation of the rule is perfectly well established by our own cases, and it is not necessary to look further: Hood *v.* Fahnestock, 8 Watts 489; Bracken *v.* Miller, 4 W. & S. 110; Martin *v.* Jackson, 3 Casey 508. It is a mistake to suppose that it depends upon the reason that no man can be supposed to always carry in his mind a recollection of former occurrences, and that if it be proved that he actually had it in his mind at the time, the rule is different. It may support the reasonableness of the rule to consider that the memory of men is fallible in the very best, and varies in different men. But the true reason of the limitation is a technical one, that it is only during the agency that the agent represents, and stands in the shoes of his principal. Notice to him is then notice to his principal. Notice to him twenty-four hours before the relation commenced is no more notice than twenty-four hours after it had ceased would be. Knowledge can be no better than direct actual notice. It was incumbent on the plaintiff to show that the knowledge of the agent, to use the accurate language of one of our cases, "was gained in the transaction in which he was employed." There was not only no evidence of this offer by the plaintiff, but it was plain that it had been gained before, and in an entirely different transaction. It is not necessary to consider in this view of the matter whether the alleged agent was really such, or only the servant or clerk of the conveyancer.

It is urged that the conveyancer of the defendants, in the employment of the owner, who was the applicant for the loan, and interested, therefore, to obtain clear searches, was guilty of negligence, which is imputable to his constituents, and will, therefore, bar their recovery. But this is to maintain that a man is to presume fraud or forgery in one, whose character is good, and that if he does not he is primâ facie negligent. When the scrivener received a clear certificate under the undoubted official seal of the recorder, he surely was not bound to presume that a fraud had been

[Houseman *v.* Girard Mutual B. & L. Association.]

committed on the recorder or his clerk, nor was there any evidence from which such fraud could be inferred. If there was no such presumption, neither would there arise any presumption beforehand, that the owner would· succeed in corrupting or deceiving the clerk or servant of the plaintiff. Without some such presumption, how can it be said that it was primâ facie evidence of negligence ? that the owner was employed in the mere ministerial service of ordinary paying for and procuring the certificate ?

We are of opinion that the learned judge was right in directing a verdict for the plaintiffs below.

Judgment affirmed. ·